## Samuel E. Gross v. Mary E. Arnold et al.

1. CONTRACTS—*By Agent Subject to Approval by the Principal.*—A contract for the sale of real estate made with an agent subject to approval by his principal does not become a binding contract until it is so approved.

**Bill to Cancel Notes, etc.**—Trial in the Superior Court of Cook County; the Hon. HENRY V. FREEMAN, Judge, presiding. Hearing and decree for complainant. Appeal by defendant. Heard in this court at the March term, 1898. Decree modified and affirmed. Opinion filed July 21, 1898.

### STATEMENT.

The appellees, Mary E. Arnold and C. H. Arnold, sought by their bill of complaint to have returned to them the sum of $10 and to have canceled certain notes given by them to appellant, Samuel E. Gross, for two lots in West Grossdale, and to have vacated a judgment entered upon one of the notes.

On the 4th of August, 1896, James, who was then engaged in selling lots for appellant, invited appellees to accompany him to West Grossdale to inspect the lots which he was offering for sale on behalf of appellant at that place. They accepted the invitation, and all three went together to West Grossdale. After looking over the ground, two lots were fixed upon as property for the purchase of which appellees were willing to negotiate. The price of the two lots was $3,500. Appellees offered $3,100. James expressed doubts as to whether or not that offer would be accepted, but proposed to submit it to appellant, Gross. In pursuance of

that proposition a written application was made out upon one of the blanks for such purpose produced by James. The application was signed by appellees. A deposit of $10 was then placed in the hands of James, who then gave appellees a receipt for the $10. The receipt stated that the money was deposited in accordance with application to purchase the lots in question at the price of $3,100; and stated further that the price, terms and conditions of the application were subject to the written approval of S. E. Gross, and if not approved the money to be refunded by the undersigned. The receipt was signed "S. E. James." James and the Arnolds then returned to the city and together they proceeded to the office of S. E. Gross. James then, in the presence of the Arnolds, reported the matter and handed the $10 and the application to his immediate superintendent, Taylor. Taylor thereupon passed the matter over to G. H. McDonald, who was the general superintendent in the sales department, handing, at the same time, to McDonald the $10 and the written application. After some discussion as to the price between McDonald and the Arnolds, McDonald concluded to accept the offer, but subject to Gross' approval. The business was then turned over to other employes of appellant, who proceeded at once to draft papers, viz., notes for the payments as agreed upon, and duplicate articles of agreement whereby Gross covenanted to convey the property to Mary E. Arnold upon the making of the payments specified in the articles, and she covenanted to make those payments. The deferred payments provided for in the articles were evidenced by notes therein described as signed by Mr. and Mrs. Arnold. The remaining payment, described as a cash payment of $1,000, the receipt whereof was acknowledged, was made up of the $10 above mentioned and a note for $990, which note was to have been paid upon the day following, namely, upon August 5th. Mrs. Arnold was to call upon August 5th, pay the $990 note, and then receive her duplicate of the articles of agreement. The notes were then signed by Mr. and Mrs. Arnold, and the duplicate articles of agreement were signed

by Mrs. Arnold. The papers so signed were left in posses-
sion of Sanford, assistant manager of appellant's office. The
name of S. E. Gross was afterward signed to the articles by
William J. Moore, the regular manager of the business.
Moore had verbal, but not written, authority from Gross to
sign. The exact time of the fixing of this signature does
not appear. By stipulation, in the record, it is established
that the signature was attached in the manner and by the
authority above stated; but neither by the stipulation nor
by any evidence does it appear when the signature was so
attached. Mrs. Arnold failed to call at the office of Gross
upon the 5th to take up the $990 note. James called upon
the Arnolds upon the morning of that day, and Mrs. Arnold
expressed an unwillingness to proceed with the matter.
There was a conflict of testimony as to whether the reason
given was, as she and her husband state it, want of hydrant
water, or, as the other witnesses state it, an inability to
meet the future payments. On the next day, that is, August
6th, James, accompanied by Taylor, again called upon her;
she again expressed an unwillingness to proceed (the reason
therefor being, as in the case of the first interview, a matter
of controversy); she repaid to James one dollar, loaned her
on the occasion of the deposit being placed in his hands
at West Grossdale, and said that Gross might keep the
deposit. About a week after the first transaction, that is,
about a week after August 4th, McDonald called upon her,
when she again repeated her unwillingness to proceed with
the contract. She called at appellant's office about the 14th
of August and asked for a copy of the contract; but, as she
had not paid the $990 note, her duplicate of the articles was
not furnished her. On August 14th Gross caused judgment
to be entered upon the $990 note. On August 26th the
first bill in this case was filed. That bill was framed for
the purpose of rescinding the contract, as was the amended
bill which followed it, and was filed September 28th. The
final amendment was filed November 14th. In the mean-
time, but after the filing of the first bill and before the filing
of the final amendment, Gross, in person, over his own sig-

nature, by an indorsement on the articles of agreement, formally approved the contract.

The bill, as originally filed, charged fraud in the procuring of the agreement to purchase, and sought to have it set aside upon that ground. The bill, as finally amended, alleged that the agreement was subject to approval in writing by Gross, and that before such approval appellees withdrew their offer; that no contractual relations had ever been created between themselves and appellant, and sought to have the deposit returned, the notes canceled, and a judgment entered upon one note vacated. The evidence was partly heard upon the issue as to fraudulent representations before the final amendment was filed.

The master, to whom the cause was referred to take testimony and report conclusions, recommended that the bill be dismissed for want of equity. The court sustained certain of appellees' exceptions to the report of the master, and entered a decree as prayed by the amended bill. The master and the court each find, in effect, that no fraudulent representations were made and that no relief upon that ground could be granted. The court, however, found that no contract was ever actually entered into by the parties, because the offer was withdrawn and rescinded before approval by appellant, Gross.

YOUNG, MAKEEL & BRADLEY, attorneys for appellant.

When one of the parties signs a contract and the other orally accepts it both are bound. Bishop on Contracts, Sec. 342.

An assent, however, may bind the party, although not express or in writing, if it can be fairly inferred from his profiting by the stipulation of the contract. 1 Parsons on Contracts, 476.

An agreement to sell land, signed only by the vendor, who, after signing and before suit, gave notice of his desire to rescind, was held binding in a suit brought by vendee for specific performance, the statute of frauds being satisfied by the signature of the party to be charged, and the

Gross v. Arnold.

question of mutuality being satisfied by the bringing of the action for specific performance. Ives v. Hazard, 4 R. I. 25.

A writing containing the terms of a contract between two parties, when signed by one and accepted by the other, becomes the contract of both. Brandon Mfg. Co. v. Morse, 48 Vt. 326.

Where one only signs a written contract he is bound if the other accepts and performs acts under it. Fairbanks v. Myers, 98 Ind. 92.

A written contract by one to sell to another upon condition of electing within a certain time to buy is binding if the election be made within the specified time. Mansfield v. Hodgdon, 147 Mass. 307.

Where, from the face of a paper, the parties to a contract are plainly indicated, if one of the parties sign and the other perform acts tantamount to an acceptance, it becomes binding upon both, and is to all intents and purposes the written agreement of both. Ames v. Moir, 130 Ill. 589.

Among the acts which are held to amount to an acceptance, so as to obviate the failure of one of the parties to attach his signature, is the commencement by that party of a suit to enforce performance of any of the terms of the contract. Estes v. Furlong, 59 Ill. 302; Short v. Kieffer, 43 Ill. App. 521; Ives v. Hazard, 4 R. I. 28.

Strong, Struckmann, Ehle & Milsted, attorneys for appellees.

Among the necessary elements of a valid contract, are a distinct communication by the parties to one another of their intention, or, in other words, proposal and acceptance, and that there must be a genuineness in the consent expressed to the proposal and acceptance. Anson on Contracts, 10.

A secret acceptance of a proposal can not constitute an agreement. It must be communicated to the proposer. Anson on Contracts, p. 2, Sec. 3; Am. & Eng. Enc. of Law, Vol. 3, 856; White v. Corlies, 46 N. Y. 467; Jenness v. Mt. Hope Iron Co., 53 Me. 20.

The most essential element of agreement is the consent of the parties. If two or more parties express their consent to a common purpose, with a view to forming a contract, this is an agreement. An agreement usually consists of an offer by one party and an acceptance by the other. Indeed, every agreement may be reduced to an acceptance of an offer. Am. & Eng. Enc. of Law, Vol. 3, 841.

A proposal may be revoked at any time before acceptance. Am. & Eng. Enc. of Law, Vol. 3, 850; Stitt v. Hindikopers, 17 Wall. 384; Warvelle on Vendors, Vol. 1, 138, 140; McDonald v. Bewick, 51 Mich. 79.

It is not essential that notice of withdrawal of an offer should be in writing or accompanied by any formalities, provided the fact of notice is brought home to the other party. It may be by word of mouth, or by an act of either party, that prevents performance of the mutual understanding. Warvelle on Vendors, Vol. 2, p. 883.

Where an offer is not accepted before it is withdrawn, there is no binding contract. Lincoln v. Gay, 164 Mass. 537.

Where withdrawal of proposal is shown, it is presumed to be in time until the contrary is shown. M. E. Church v. Sherman, 36 Wis. 404; Johnson v. Filkington, 39 Wis. 62; Moore v. Flynn, 135 Ill. 74.

If either party neglects to bind himself, the instrument is void for want of mutuality, and the party who is not bound can not avail himself of it as obligatory upon the other, nor can he, by subsequent ratification, bind the other without his consent, and the fact that a deposit is made is immaterial. Dodge v. Hopkins, 14 Wis. 630; Townsend v. Corning, 23 Wend. (N. Y.) 435.

Mutuality is a necessary element of contracts. Chitty on Contracts, 297; Bishop on Contracts, 32; Wharton on Contracts, 5; Vogel v. Pekoc, 157 Ill. 342.

Even though the writing is signed by the party to be charged, in accordance with the statute of frauds, there must also be an acceptance by the other party, and, prior to such acceptance, the proposal may be withdrawn. Perkins v. Hadsell, 50 Ill. 217.

MR. JUSTICE SEARS delivered the opinion of the court.

It is undisputed that the agreement, made at the time of the payment of the $10, and the giving of the receipt therefor, was made subject to the written approval of appellant, S. E. Gross. James, called as a witness by appellant, testified: "I made the price $3,100, subject to Mr. Gross' approval." The receipt given at that time reads as follows: "Received of Mr. and Mrs. C. H. Arnold, ten dollars, deposited in accordance with application to purchase lots 8 and 9, block 2, Sub. 49, price $3,100. Price, terms and conditions of said application are subject to the written approval of S. E. Gross, and if not approved, money to be refunded by the undersigned, but if approved, to be closed ................189...., or above deposit forfeited.

(Signed)    S. E. JAMES."

It is also undisputed that McDonald, the general superintendent of appellant's sales department, told appellees when the papers were signed, that the transaction was still subject to approval by Mr. Gross. He testified: "I told her I would pass the deal subject to Mr. Gross' approval. If he would not accept of it, of course her money would be returned to her; and then instructed Mr. Sanford to draw papers for them to sign." The papers referred to were the articles of agreement and notes in question. The same witness testified: "The contract was subsequently approved by Mr. Gross when he signed it."

No approval in writing was made by Gross until after this suit was begun. It was stipulated between the parties as follows: "That the indorsement written upon the instrument as follows, 'I hereby ratify the within contract, Samuel E. Gross,' was written and signed by Gross after the original bill in this case was filed, but before the last amendment was filed." It is, in effect, undisputed that on August 5th and 6th, the two days following the payment of the deposit, the giving of the receipt and the making of the papers, the Arnolds informed James, the agent through whom the transaction was carried on for appellant, that they would not make the purchase. James testified: "I

called the next morning; she said she was afraid they could not take them; that Mr. Arnold had got up in the night and figured on the interest, and she thought it was more than they could meet, and she wanted to think of it another day. * * * I called again the next day, that is the second day after the sale. * * * She guessed she would throw them up entirely, or something like that; she guessed she would let them go and let Mr. Gross have the $10 that she had paid." C. H. Arnold testified: "When James called the next morning, Mrs. Arnold told him she couldn't take the lots; that there was no water on them. * * * He offered to pay the first year's interest on it himself. I told him that was not material, I would not fulfill the contract." Mrs. Arnold testified: "What happened next day in my dealings with Gross' representative was, I told him I found out there was no water, and they told me all improvements were in. I told him it was too much money; told him we would not carry out the contract."

We are of opinion that the evidence very clearly sustains the following findings of the chancellor: "That it was expressly agreed and understood between complainants and the said agents that the said articles of agreement were taken by said agents subject to the approval of said defendant, S. E. Gross, which approval was to be made in writing; and it was further expressly understood that in case said agreement to purchase should not be approved by said Gross as aforesaid, then the said deposit of $10 paid by complainants as alleged in the amended bill should be returned to them, and the articles of agreement and notes canceled and destroyed; that before the offer of complainants was accepted or approved by Gross, complainants notified the agents of Gross that they withdrew the offer and refused to carry out the provisions of same, and would not make any of the payments provided for therein; that the offer made by complainants was thereby rescinded, and that there was never any contract relation between complainants and defendant, Gross; that the articles of agreement, the notes and the deposit of $10 were obtained from the complainants

by the agents of defendant and by the defendant without any consideration, and that the articles of agreement are void and of no effect; that the confession of judgment was entered without right or authority and is of no binding force or effect."

The decree entered by the court necessarily followed from these findings.

It is urged by counsel for appellant that the court should have found that the approval by Gross, which was contemplated by the parties when the papers were signed, was a distinct approval, and not of necessity in writing. We think that the court found correctly, and that it appears from all the evidence that the approval contemplated was such approval as was specified in the receipt, viz., written approval. Such evidently was the view taken by the parties themselves, for Gross did approve in writing, after suit begun, and in such writing said, " I hereby ratify the within contract." McDonald so viewed it, for he testified that the contract was subsequently approved by Gross " when he signed it."

If, however, it were conceded, as contended for by counsel, that any distinct approval by Gross, whether in writing or not, by him personally or through Moore acting for him, would suffice, yet we can not see how the result could be any different. The contract, *i. e.*, articles of agreement for purchase and sale, were certainly not approved before they were executed by Moore, the general manager of appellant's office. It appears that Moore did not sign them upon August 4th, the day of the making of the deposit and signature by the Arnolds. It is so stated by counsel for appellant in their brief, and although it does not appear from the abstract, we assume the statement to be correct. It does not appear, therefore, that the articles of agreement were approved or even executed by any one on behalf of Gross, when, on the 5th and 6th of August, the Arnolds withdrew their offer and refused to buy. It lay in the power of appellant to show just when the signature by Moore was made. In absence of such showing, and it appearing that

it was not made at the date of the articles, *i. e.*, upon
August 4th, no presumption will obtain that it was done
before the rescission by appellees. It can not be maintained
that there could be an approval by Sanford before execution
by Moore. But we are of opinion that the approval con-
templated by the parties was such an approval as was
attempted to be effected by Gross after the beginning of
this suit, viz., an approval in writing. Until such approval
the contract was not yet entered into by appellant and
hence neither by appellees.

Awaiting the execution of the articles of agreement by
Gross, either personally or by agent with his written
approval of the same, the papers were merely left in escrow
in the hands of one of his employes. Before a contract had
become binding upon Gross, the appellees elected to with-
draw their offer.

It is urged by counsel for appellant that even if appellees
are entitled to the relief granted as to the judgment and
notes, yet the decree should not have awarded a return of the
$10. Counsel for appellees concede that the decree be
modified to the extent of this award. Without passing
upon the propriety of the decree in this behalf, and solely
upon the suggestion of counsel, we modify the decree by strik-
ing out that portion which decrees the payment of the $10
by appellant, and in all other respects the decree is affirmed.

Appellees will recover their costs. Decree affirmed.